IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **OTC SOLUTIONS, LLC; GOLDEN DRAGON MEDIA, INC.; and PUDONG, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN DOES 1-50**,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 1:10-cv-500 |

Plaintiffs OTC Solutions, LLC, Golden Dragon Media, Inc., and Pudong, LLC, (collectively "Plaintiffs") by and through counsel, complain of Defendants John Does 1-50, demand a jury trial, and allege as follows:

## JURISDICTION

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1331 as the claims involve questions of federal law. Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

2. On information and belief, this Court has personal jurisdiction over Defendants because they have constitutionally sufficient contacts with North Carolina so as to make personal jurisdiction proper in this Court. In particular, the unlawful acts committed by Defendants have been and were, in whole or in part, targeted towards, carried out, made effective, and caused injury within the Middle District of North Carolina. On further information and belief, Defendants' direct their interactive

website(s) to residents of North Carolina and the website(s) also receives visits from people residing in the Middle District of North Carolina. On information and belief, Defendants have conducted or solicited business within this district and have sought to derive revenue from such contacts within this district and elsewhere in North Carolina.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims described below occurred in this district and a substantial part of the property subject to this action is also located in this district.

## THE PARTIES

4. Plaintiff OTC Solutions, LLC, ("OTC Solutions") is a Maryland limited liability company whose principal place of business is 4424 Montgomery Avenue, Suite 201, Bethesda, MD 20814.

5. Plaintiff Golden Dragon Media, Inc., ("Golden Dragon Media") is a Canadian corporation whose principal place of business is Montreal, Canada.

6. Plaintiff Pudong, LLC, ("Pudong") is a Florida limited liability company whose principal place of business is Boca Raton, Florida.

7. Defendants John Does 1-50 ("Defendants") are unknown at this time.

## FACTS COMMON TO ALL CLAIMS IN THIS LITIGATION

8. Plaintiffs are financial communications and consulting companies specializing in micro-cap and small-cap companies listed on the OTC Bulletin Board, OTC.PK, AMEX, and NASDAQ. Part of their services include creating and distributing stock reports to interested parties via email.

2

9. The stock reports, in the form of a newsletter, are only distributed to subscribers to Plaintiffs' newsletters. To become a subscriber to the newsletter, a person must proactively choose to receive Plaintiffs' newsletter. Specifically, a person must request to receive the newsletter and in doing so provide an email address to which the newsletter might be sent.

10. Given the nature of online marketing and promotion, the value of a list of the nature created and cultivated by Plaintiffs is very high. With Internet users constantly receiving spam email, a list of users with a verified interest in receiving certain promotions is invaluable. Lists of this nature also derive their value from the fact that federal and state laws and regulations continue to constrain the use of spam email and other forms of bulk electronic messaging. Individuals and companies interested in directly marketing to persons by the Internet are, therefore, required to build up subscriber lists similar to that developed by Plaintiffs. Such a customer list takes significant time, effort, and money to develop, maintain, protect, and grow.

11. Each Plaintiff has numerous lists ("Subscriber Lists"), comprising anywhere from 25,000 to 65,000 subscribers. Each list has grown as a result of significant marketing efforts by Plaintiffs, which includes Internet-based advertising costs in excess of $30,000 per day. Plaintiffs are the exclusive owners of the Subscriber Lists and have not sold or otherwise allowed access to or use of the lists for any purpose by any third parties.

12. Plaintiffs spent, and continue to spend, significant sums of money building, maintaining, and promoting the Subscriber Lists, and estimates the total value of each Plaintiffs' Subscriber Lists to be between $2.5 and $4 million.

13. In addition to the Subscriber Lists, the actual newsletters distributed to the people on the Subscriber Lists are also the product of the extensive work and efforts of Plaintiffs. Specifically, companies and individuals hire Plaintiffs to promote and market certain stocks in their newsletters to the people in the Subscriber Lists. Plaintiffs' efforts in promoting the Subscriber Lists, therefore, are intended to expand the reach of the newsletter distributed by Plaintiffs and to promote future contracts and business relationships with companies and individuals interested in promoting stock through Plaintiffs' newsletters.

14. The promotion of stock in this manner is a highly-specialized endeavor. Not only must a company comply strictly with all SEC and other relevant regulations, but a company must also go to great lengths to provide its product in an honest and trustworthy manner. That is, the reputation of a newsletter of the sort developed by Plaintiffs is critical and directly affects its value. Therefore, to be effective, a company must successfully navigate these dynamics as even the slightest notion of illegitimacy will significantly decrease value.

15. In order to better protect and manage the process of distributing its newsletters to the Subscriber Lists, Plaintiffs entrusted their Subscriber Lists to iContact Corporation ("iContact"), a third-party vendor. iContact is an online marketing firm that specializes in email and Internet marketing. Plaintiffs have been using iContact for over

4

one year to maintain their Subscriber Lists and deliver their newsletter to customers on said lists.

16. In late January of 2010, iContact reported to its clientele that iContact security was breached. Specifically, there were reports from customers that subscribers on their respective lists had received emails from sources other than iContact. Through additional investigation, iContact discovered that subscriber email addresses were compromised. In light of this event, iContact assured its customer base that it was going to increase and enhance security measures. The specific security enhancement steps taken by iContact included strengthening password policies and access controls, enhancing the logging and monitoring of internal systems, and implementing additional authorization controls for systems containing customer data.

17. Upon information and belief, in April 2010, certain unknown individuals unlawfully gained access to Plaintiffs' Subscriber Lists and downloaded them from iContact. These individuals comprise some of the John Doe Defendants.

18. Plaintiffs became aware of the theft when they began noticing unauthorized and unlawful spam messages being sent to members of their Subscriber Lists. Specifically, the illegal spam messages purported to be stock reports similar to those created and distributed by Plaintiffs. Some of the illegal spam newsletters even incorporated key phrases that Plaintiffs use when promoting stock.

19. Plaintiffs became aware of the illegal spam newsletters through their "seed emails," email accounts that they created solely for the purpose of tracking activity on their Subscriber Lists. Thus, the only way someone could obtain and send messages to

5

the "seed emails" would be if they had obtained the Subscriber Lists themselves. It was through this monitoring that Plaintiffs discovered their lists were being sent counterfeit newsletters, illegal spam, and other bulk electronic messages.

20. Plaintiffs' Subscriber Lists have been misappropriated and used without authorization by Defendants. The only way this could have occurred is if iContact's security was breached, or someone unlawfully obtained Plaintiffs' passwords and access codes to gain unauthorized access to the Subscriber Lists that Plaintiffs' maintained at iContact. In either event, one or more persons unlawfully gained access to iContact computers and/or the iContact network and misappropriated Plaintiffs' Subscriber Lists.

21. After misappropriating Plaintiffs' Subscriber Lists, one or more Defendants used the lists to distribute newsletters, intended to imitate the newsletters created and distributed by Plaintiffs. Specifically, one or more Defendants uploaded the misappropriated Subscriber Lists to new and/or separate accounts at iContact through an iContact computer and/or network, and then used iContact's email marketing services to distribute their own illegal spam newsletters.

22. Employees at iContact have since confirmed Plaintiffs' suspicions that their Subscriber Lists had been uploaded to new accounts controlled by others, who then used iContact's services to send out illegal spam newsletters.

23. Upon information and belief, one or more Defendants have also used the misappropriated Subscriber Lists to distribute other promotional newsletters and advertisements through other Internet marketing firms similar to iContact. These actions have greatly diluted the value and effectiveness of the Subscriber Lists.

24. Plaintiffs have gone to great lengths to discover the specific identity of the Defendants following the security breach and/or unlawful access at iContact and the misappropriation and illegal use of Plaintiffs' Subscriber Lists, but have been unable to do so.

25. For example, Plaintiffs have been in contact with counsel and staff at iContact and have endeavored to discover how the security breach or unlawful access occurred and who misappropriated the Subscriber Lists, as well as who used the lists to distribute newsletters and other bulk electronic communications through iContact.

26. Plaintiffs have also engaged the consulting services of a specialist in computer and Internet investigations, who has been trying to track down the Defendants responsible for the spam messages. Importantly, the first three illegal spam newsletters referenced three domain names: microcapexpress.com, investorflux.com, and mindonmarkets.com. Plaintiffs have been able to identify the registrant for these domains (the individual to whom the three domain names are currently registered). Plaintiffs have also been able to identify other individuals who appear to do business with the domain name registrant, and to find additional evidence that appears to link several other individuals to the illegal spam newsletters.

27. However, Plaintiffs efforts to confirm with reasonable certainty the true identity of the registrant have been unavailing, and the address listed for the registrant is not a real location. Based on their investigation to date, Plaintiffs conclude that the registrant is a fictional person.

## FIRST CLAIM FOR RELIEF
(Fraud and Related Activity in Connection with Computers – 18 U.S.C. § 1030)

28. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

29. Upon information and belief, the Subscriber Lists were misappropriated through the use of computer technology. The exploitation of the Subscriber Lists post-theft has rendered the list almost worthless and caused irreparable economic harm to Plaintiffs.

30. Upon information and belief, Defendants intentionally accessed computers on the iContact premises and obtained protected information from those computers, specifically, the Subscriber Lists developed, maintained, and utilized by Plaintiffs.

31. The computers and network at iContact are designed for marketing purposes, with the intent to solicit customers in multiple states and countries. The computers accessed by Defendants are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used to affect interstate commerce and communication through the dissemination of electronic communications to members of the Subscriber Lists. Additionally, the computers accessed at iContact are high-speed data processing devices, used to perform logical, arithmetic, and data storage functions. Indeed, iContact is a data storage and communications facility, which exists to, among other things, hold and protect proprietary customer lists.

32. At no time were Defendants authorized to access the Subscriber Lists stored on computers at the iContact facility. Rather, upon information and belief,

8

Defendants knowingly and with an intent to defraud, unlawfully accessed the iContact computers through nefarious means. These actions are all in violation of 18 U.S.C. § 1030(a)(4). Specifically, Defendants either illegally obtained access to the iContact computers and network and stole the Subscriber Lists, or Defendants stole Plaintiffs' passwords and/or access codes and used those codes to gain unauthorized access to the Subscriber Lists, which are valued in the millions of dollars.

33. The theft of the Subscriber Lists and the unlawful use on the lists by the Defendants post-theft has caused irreparable damage to the integrity of the list, severely decreasing their value. This is because a significant component of the lists' value is in its exclusivity and legitimacy as a direct source of contact to qualified and interested parties, the use of the list by non-authorized parties renders the lists almost worthless.

34. Compounding the damages from use and dilution of the list by Defendants, Defendants have used the list as a means to distribute and solicit imitation and counterfeit newsletters to Plaintiffs' clientele. Specifically, Defendants have created newsletters substantially similar to those previously distributed by Plaintiffs. Not only is this an unfair capitalization on Plaintiffs' efforts to develop a clean list, but it has rendered the list worthless as those persons on the list have now been subjected to illegal spam and other unauthorized solicitations intended to imitate legitimate products.

35. Upon information and belief, Defendants worked in concert and conspired to commit the above-described violations of 18 U.S.C. § 1030. The total damage and loss suffered by Plaintiffs as a result of Defendants' actions exceeds $5,000 dollars.

36. The theft and exploitation of Plaintiffs' Subscriber Lists, as well as the damages resulting from such theft and exploitation, are the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent in violation of 18 U.S.C § 1030 to the economic detriment of Plaintiffs, the extent of which shall be determined by the trier of fact.

37. These violations of the Computer Fraud and Abuse Act give rise to civil liability under 18 U.S.C. § 1030(g). Plaintiffs have suffered significant economic loss as a result of Defendants' conduct. Specifically, Plaintiffs have suffered:

    a. The loss of business and business goodwill, the amount of which will be determined by the trier-of-fact;

    b. The loss of revenue and other consequential damages, the amount of which will be determined by the trier-of-fact;

    c. The costs associated with responding to Defendants' conduct, including but not limited to costs associated with conducting a damage assessment, restoring data and other proprietary information, and attempts to limit and mitigate the damage and exposure to Plaintiffs.

**SECOND CLAIM FOR RELIEF**
(Wire and Electronic Communications Interception and Interception of Oral Communications – 18 U.S.C. § 2520)

38. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

10

39. Upon information and belief, the only way Defendants could have secured the Subscriber Lists is through the interception of electronic communications between Plaintiffs, iContact, and/or the subscribers to the Subscriber Lists.

40. Upon information and belief, Defendants intentionally intercepted, endeavored to intercept, or procured another person to intercept, electronic communications created by and/or intended to be used by Plaintiffs. The "electronic communications" intercepted by Defendants were signs, signals, writings, images, data, or intelligence transmitted to affect interstate commerce as defined by the statute. Specifically, the communications were lists of individuals with a twice-confirmed interest in receiving solicitations and newsletters from Plaintiffs—and only Plaintiffs—as well as the solicitations and newsletters themselves.

41. Upon information and belief, Defendants, or someone procured to work on their behalf, intercepted the electronic communications through the use of an electronic, mechanical, or other device. Upon information and belief, the device used to intercept the electronic communications was:

    a. Affixed to a wire, cable, or other like connection; or

    b. Used with the understanding that any component of the device had been sent through mail or transported through interstate commerce; or

    c. Endeavored to be used on the premises of iContact, which as a business affects interstate commerce, and/or for the purpose of

11

obtaining information related to the operations of iContact and Plaintiffs, which both affect interstate commerce; or

d. Used by persons acting in the territory of the United States.

42. After intercepting the subject electronic communications, Defendants then disclosed to others the contents of the communications. Specifically, the communications were exploited and used to distribute newsletters, spam, and other bulk electronic communications.

43. Upon information and belief, Defendants used the intercepted communications to secure economic gain for themselves because, among other things, the subsequent newsletters, spam, and bulk electronic communications encouraged members of the Subscriber Lists to purchase stock that if purchased, upon information and belief, would economically benefit Defendants.

44. Therefore, upon information and belief, Defendants received economic benefit and gain as a direct result of the interception, disclosure, and use Plaintiffs' electronic communications with iContact and the subscribers to the Subscriber Lists.

45. The interception of Plaintiffs' electronic communications with iContact and members of the Subscriber Lists, as well as the damages resulting from the interception of the electronic communications, are the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent in violation of 18 U.S.C. §§ 2510-2522 to the economic detriment of Plaintiffs, the extent of which shall be determined by the trier of fact.

## THIRD CLAIM FOR RELIEF
(Stored Wire and Electronic Communications and Transactional Records Access –
18 U.S.C. § 2707)

46. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

47. Defendants intentionally, willfully, and knowingly accessed, without authorization, the iContact facility and obtained and/or altered electronic communications and content owned by Plaintiffs.

48. Upon information and belief, the infiltration and theft of the electronic communications by Defendants was done in the interest of gaining commercial advantage and profit, as the stolen Subscriber Lists—which were an integral part of the stolen communications—have since been used by Defendants for commercial gain.

49. The access and subsequent theft by Defendants of the electronic communications has caused significant commercial disadvantage and detriment to Plaintiffs in that the Plaintiffs' Subscriber Lists were extremely valuable and have now lost much, if not all, of their value as a result of Defendants' conduct.

50. The unauthorized access of iContact's electronic storage facility, the theft of the electronic contents stored at said facility, and Plaintiffs' damages resulting from the unauthorized access and theft of the stored data, are the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent violation of 18 U.S.C. §§ 2701-2712 to the economic detriment of Plaintiffs, the extent of which shall be determined by the trier of fact.

## FOURTH CLAIM FOR RELIEF
(North Carolina Trade Secrets Act – N.C. Gen. Stat. section 66-152)

51. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

52. The Subscriber Lists established, developed, and compiled by Plaintiffs constitute a "trade secret" as defined by the North Carolina Trade Secrets Act. Specifically, the commercial value of each list was fundamentally tied to its exclusivity and legitimacy as a source of consumers with a twice-confirmed interest in the product and service provided by Plaintiffs. Once such a list is made public, and subjected to unauthorized and illegal publications of counterfeit newsletters, illegal spam, and bulk electronic communication, the list loses its integrity and value.

53. The acquisition, disclosure, and use of the Subscriber Lists, as described above, constitutes "misappropriation" as defined by the North Carolina Trade Secrets Act. Specifically, Defendants did not have express or implied authority for the unlawful acquisition and use of the Subscriber Lists.

54. Defendants' misappropriation of the Subscriber Lists has led to irreparable economic damage to Plaintiffs and has likely greatly enriched or benefited Defendants.

55. The misappropriation of Plaintiffs' Subscriber Lists, as well as Plaintiffs' damages resulting from this misappropriation, are the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent in violation of N.C. Gen. Stat. sections 66-152-158 to the economic detriment of Plaintiffs, the extent of which shall be determined by the trier of fact.

## FIFTH CLAIM FOR RELIEF
(Computer Trespass – N.C. Gen. Stat. section 14-458)

56. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

57. Defendants did not have authority to access the iContact computers and network, or Plaintiffs' computers and network.

58. Upon information and belief, Defendants accessed the iContact computers and network in order to acquire, copy, or steal Plaintiffs' Subscriber Lists that were located on the iContact computers and network; or, Defendants accessed Plaintiffs' computers and network in order to steal passwords, access codes, or other information that would provide Defendants with unauthorized access to the Subscriber Lists located at iContact.

59. Once Defendants were able to secure and posses Plaintiffs' Subscriber Lists found on the iContact computers and network, upon information and belief, Defendants engaged in fraudulent behavior by falsely identifying themselves in order to create and transmit counterfeit electronic communications intended to mirror or imitate a similar product created, owned, and utilized by Plaintiffs. Specifically, Plaintiffs used the misappropriated Subscriber Lists to directly inform and solicit specific consumers with a newsletter uniquely developed and owned by Plaintiffs. That is, Defendants used Plaintiffs' Subscriber Lists to transmit bulk commercial electronic mail. The transmission of this bulk electronic mail directly caused the damages suffered by Plaintiffs.

60. The trespass perpetrated by Defendants on iContact computers and the iContact network allowed Defendants to exploit Plaintiffs' Subscriber Lists for Defendants' economic benefit and Plaintiffs' economic loss.

61. The trespass perpetrated by Defendants on Plaintiffs' computers and network allowed Defendants to exploit Plaintiffs' Subscriber Lists for Defendants' economic benefit and Plaintiffs' economic loss.

62. Defendants' computer trespass, as well as Plaintiffs' damages resulting from this misappropriation, are the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent in violation of N.C. Gen Stat. sections 14-453-459 to the economic detriment of Plaintiffs, the extent of which shall be determined by the trier of fact.

### SIXTH CLAIM FOR RELIEF
(Tortious Interference With Contract and Prospective Economic Advantage)

63. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

64. Upon information and belief, the unlawful access, misappropriation, and exploitation of Plaintiffs' Subscriber Lists was conducted with malicious intent on the part of Defendants. That is, Defendants intended, upon information and belief, to steal and exploit the Subscriber Lists in order to injure Plaintiffs and/or secure economic advantage at Plaintiffs' expense.

65. Through unauthorized access and exploitation of Plaintiffs' Subscriber Lists, Defendants interfered with then-existing contractual relationships between

Plaintiffs and companies and/or individuals who had contracted with Plaintiffs to promote certain stocks. Specifically, by exploiting and diluting the Subscriber Lists with counterfeit newsletters, spam, and other bulk electronic messages, Defendants, upon information and belief, decreased the return on investment both the Plaintiffs and the contracting companies and/or individuals expected through distribution of Plaintiffs' newsletter. The economic benefit of the then-existing contractual relationships was, therefore, decreased or eliminated by Defendants' malicious interference.

66. Through unauthorized access and exploitation of Plaintiffs' Subscriber Lists, Defendants interfered with Plaintiffs' existing contractual relationship with subscribers on the Subscriber Lists. Specifically, after being subjected to counterfeit newsletters, spam, and other bulk electronic messages, members of the Subscriber Lists, upon information and belief, have opted out of receiving Plaintiffs' newsletters and/or are no longer inclined to be as receptive as they previously were to the content of the newsletters.

67. Through unauthorized access to and exploitation of Plaintiffs' Subscriber Lists, Defendants interfered with Plaintiffs' prospective economic advantage. With the loss of the value and utility of Plaintiffs' Subscriber Lists came the loss of prospective economic advantage and contracts with future parties interested in promoting stock through Plaintiffs' newsletter. Upon information and belief, future contracts and economic relationships would have been established but for Defendants tortious interference. That is, through their unlawful and malicious conduct, Defendants induced third-parties to refrain from entering into contractual and other economic relationships

with Plaintiffs.

68. Defendants' interference with then-existing contractual relationships as well as future contractual and economic relationships, as well as Plaintiffs' damages resulting from this interference, is the result of unlawful conduct by Defendants committed with deliberate, willful, and malicious intent.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs demand judgment against Defendants as follows:

1. Economic damages resulting from the "loss" suffered by Plaintiffs as defined by 18 U.S.C. § 1030(e)(11), as well as any other consequential damages;

2. Any and all profits and enrichment enjoyed by Defendants as a result of their conduct, including but not limited to, the use of the Subscriber Lists for economic gain;

3. Punitive or exemplary damages under 18 U.S.C. §§ 2520, 2707 and N.C. Gen. Stat. § 1D-15, in an amount to be determined by the trier-of-fact;

4. Interest on special and general damages at the legal rate until paid, interest on any judgment awarded herein at the legal rate until paid, and such other and further relief as the Court deems equitable and just;

5. Damages in an amount no less than the lesser of $10.00 for each and every unsolicited bulk commercial mail message transmitted in violation of N.C. Gen. Stat. section 14-458, or $25,000 dollars per day; and

6. Damages in an amount no less than $100 dollars per day for each day of Defendants' violations of 18 U.S.C. § 2520, or $10,000, whichever is greater in statutory damages under 18 U.S.C. § 2520(c)(2)(B).

7. Attorney fees and related costs of litigation and losses associated with the cost of this action, together with interest on special and general damages at the legal rate until paid, interest on any judgment awarded herein at the legal rate until paid, and such other and further relief as the trier-of-fact deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs request that this case be tried by a jury.

DATED this 29th day of June, 2010.

/s/ M. Todd Sullivan
M. Todd Sullivan, NCSB # 24554
Womble Carlyle Sandridge & Rice, PLLC
Post Office Box 831
Raleigh, North Carolina 27602
Telephone: (919) 755-2100
Facsimile: (919) 755-6058
Email: tsullivan@wcsr.com
**ATTORNEYS FOR PLAINTIFF**

OF COUNSEL:
Brent R. Baker
Juliette P. White
John E. Delaney
Michael W. Young
PARSONS BEHLE & LATIMER
201 South Main Street #1800
Salt Lake City, UT 84111
Phone: 801-532-1234
Fax: 801-536-6111
BBaker@parsonsbehle.com
JWhite@parsonsbehle.com