## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **OTC SOLUTIONS, LLC; GOLDEN DRAGON MEDIA, INC.; and PUDONG, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN DOES 1-50,**<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE COMPLIANCE WITH SUBPOENA AND ORDER TO SHOW CAUSE AGAINST ICONTACT CORPORATION**<br><br>**Case No. 1:10-cv-00500-UA-LPA** |

Plaintiffs OTC Solutions, LLC, Golden Dragon Media, Inc. and Pudong, LLC (collectively "Plaintiffs") respectfully submit this memorandum in support of their Motion for Immediate Compliance with Subpoena and Order to Show Cause Against iContact Corporation.

### INTRODUCTION

Pursuant to an Order of this Court (*see* Docket No. 8), Plaintiffs served iContact Corporation ("iContact") on July 19, 2010 with a subpoena for the production of documents (the "Subpoena"). The Subpoena commands iContact to produce documents and information as set forth therein by July 30, 2010. iContact has produced nothing in response to the Subpoena.

iContact has possession, custody and control of documents and information vital to Plaintiffs in this case. iContact's failure to comply with the Subpoena has significantly

prejudiced, and continues to prejudice, Plaintiffs' efforts in this case. As demonstrated in detail below, there have been extensive discussions aimed at attempting to get iContact to comply with its obligations under Rule 45 of the Federal Rules of Civil Procedure, but those discussions are at an impasse. Accordingly, Plaintiffs respectfully request that this Court enter an order requiring iContact to immediately and fully comply with the terms of the Subpoena and appear before this Court to show cause why it should not be held in contempt.

## STATEMENT OF FACTS

1.     On June 29, 2010, Plaintiffs filed the complaint in this case, listing as fictitious defendants "John Does 1-50" because their identities are unknown.

2.     As set forth in the complaint, this case concerns the theft by unknown parties of certain commercially valuable and trade secret electronic data owned by Plaintiffs (the "Subscriber Lists").

3.     In late April 2010, prior to the filing of the complaint in this case, Plaintiffs' learned that their Subscriber Lists were stolen while being housed and maintained by iContact on Plaintiffs' behalf.

4.     Plaintiffs learned of this theft when their "seed email" accounts – private email accounts known only to Plaintiffs – began receiving illegal and unauthorized spam newsletters (the "Spam"). As part of an immediate preliminary investigation into this theft, representatives of Plaintiffs contacted iContact and learned from an iContact employee named Victoriya Bobbitt that there had been an unusual amount of activity relating to Plaintiffs' iContact accounts.

2

5.      Shortly after talking with Ms. Bobbitt, Plaintiffs further learned that the Spam was being sent to the people on the Subscriber List – including to the seed email accounts – through iContact and its bulk email delivery service.  Thus, the person sending the Spam was (and may still be) a client of, and had (or has) an account or accounts with, iContact (the "iContact Spammers").

6.      Representatives of Plaintiffs continued to try to work with representatives of iContact to identify the iContact Spammers and/or to at least stop the delivery of the Spam, but those cooperative efforts quickly failed.

7.      Plaintiffs then engaged counsel to assist them in addressing these issues.  In that regard, on May 4, 2010, via telephone and letter, Plaintiffs' counsel contacted Mr. Ben Redding, Corporate Development Manager for iContact to informally discuss ascertaining the identities of the iContact Spammers, and to again try to get iContact to stop facilitating delivery of the Spam.

8.      On May 5, 2010, Plaintiffs' counsel, Mr. Redding and other iContact employees had another telephone conversation wherein iContact took the position that it would not provide the identities of the iContact Spammers without a court Order.

9.      Because of Plaintiffs' need to find out the identity of the people who misappropriated the Subscriber Lists and the iContact Spammers, on July 12, 2010, Plaintiffs moved this Court for and obtained an Order Granting Plaintiffs' Motion for Accelerated, Pre-Conference Discovery (Fed. R. Civ. P. 26(d)) ("Order").  The Order allowed Plaintiffs to proceed with expedited discovery against third-parties, including iContact, believed to be in possession of documents relating to the John Does named in

the instant case. *See* Docket No. 8. The Order further authorized Plaintiffs to "require full and complete responses to any subpoenas within ten business days of service." *Id.*

10. Pursuant to the Order, on July 19, 2010, Plaintiffs served iContact with the Subpoena, which was received by iContact's registered agent on June 22, 2010. A true and correct copy of the Receipt for Certified Mail is attached hereto as Exhibit A.

11. On July 27, 2010, counsel for iContact emailed Plaintiffs' counsel stating in relevant part:

> "iContact is working diligently on its response to the subpoena request. While most of the items are reasonable, there are a couple of items, the response to which is unduly burdensome (based on a literal (and presumably unintentional) interpretation of the request). Please let me know with whom I should discuss such items."

A true and correct copy of this email is attached hereto as Exhibit B, p. 10.

12. Counsel then spoke telephonically regarding the scope of the Subpoena, which was amicably resolved and is not at issue here, but iContact also expressed potential concerns regarding claimed confidentiality issues relating to iContact's production.

13. By email dated August 3, 2010, Plaintiffs inquired of the status of iContact's progress in responding to the Subpoena (a true and correct copy of this email is attached hereto as Exhibit B, p. 8), to which iContact responded on August 5, 2010, stating in relevant part:

> "I received from iContact its initial data download in response to the subpoena. After sorting through such data, I requested additional data which I received this evening. Prior to organizing and sending the same to you, I have a couple of questions regarding delivery and protection of data provided. Please let me know when you will be available to discuss."

4

A true and correct copy of this email is attached hereto as Exhibit B, pp. 7-8.

14.     In response, Plaintiffs' counsel advised that Plaintiffs' would likely agree to a reasonable protective order or similar agreement, and invited iContact's counsel to send a draft of such proposed order or agreement.  A true and correct copy of this email is attached hereto as Exhibit B, p. 7.

15.     Counsel then again spoke telephonically, and iContact's counsel advised that his client preferred a letter agreement to protect the documents it intended to produce. So, by email dated August 10, 2010, Plaintiffs' counsel advised in relevant part:

> "I think it would be more efficient if you sent me a letter proposing the terms for protection [of iContact's documents].  I am a bit hindered by the fact that I don't know what exactly what types of documents and information your client will be producing, and what levels of sensitivity might apply.  Can you please send me a letter proposing terms of confidentiality that is appropriate for your production?"

A true and correct copy of this email is attached hereto as Exhibit B, p. 6.

16.     In response, on Wednesday, August 10, 2010, iContact's counsel advised that he would draft a letter setting forth terms for protection, but that "[n]ote, however, that drafting such a letter will further delay document production.  I will be out of town on Thursday and Friday."  A true and correct copy of this email is attached hereto as Exhibit B, pp. 5-6.

17.     Accordingly, and to avoid further delay in iContact's claimed intention to comply with the Subpoena, Plaintiffs' counsel drafted and sent iContact's counsel a letter dated August 11, 2010 setting forth terms believed to address iContact's confidentiality concerns with respect to the Subpoena, specifically stating:

> "As you know, we are awaiting your production of documents and things that are

5

responsive to the [Subpoena]. . . . To assist in that regard, this letter will confirm that this law firm, and its clients . . ., agree to treat all documents and things produced by iContact in response to the Subpoena as confidential and subject to any expressly applicable orders issued by the court in this case."

A true and correct copy of that letter is attached hereto as Exhibit C.

18.     However, iContact was unsatisfied with Plaintiffs' August 11 letter. Thus began, as detailed below, a long series of additional telephone calls and email exchanges between counsel to continue to attempt to address without the Court's involvement iContact's claimed confidentiality concerns.

19.     Specifically, over the course of well over one month, instead of exercising its rights under the Federal Rules of Civil Procedure and seeking to quash the Subpoena or moving for a protective order, or even providing any non-sensitive documents that are responsive to the Subpoena, iContact continually demanded that Plaintiffs revise the language in the letter agreement again and again to apparently better suit iContact's desires.  As shown below, these demands included more and more terms and restrictions on Plaintiffs' access to and use of the documents and information required to be produced under the Subpoena.

20.     For example, by email dated August 12, 2010, iContact requested  a number of additional and very broad terms to the agreement, terms that attempted to significantly limit Plaintiffs' ability to use any documents produced by iContact, greatly overreached and requested indemnification for any such use, and attempted to make Plaintiffs agree to waive, "absent any discovery of criminal conduct," any legal or equitable claim Plaintiffs

6

may have against iContact. A true and correct copy of this email is attached hereto as Exhibit B, pp. 4-5.

21. Notwithstanding the sheer breadth of iContact's requested changes, by email dated August 16, 2010, Plaintiffs' counsel (1) advised that some of iContact's proposed new terms were acceptable, subject to slight modification, (2) reaffirmed that Plaintiffs would be bound by any protective order filed in this case with respect to iContact's documents, and (3) rejected with explanation iContact's unreasonable requests. A true and correct copy of this email is attached hereto as Exhibit B, p. 3.

22. Hearing nothing from iContact regarding its August 16 email, Plaintiffs' counsel contacted iContact's counsel on August 19, 2010, requesting a response (a true and correct copy of this email is attached hereto as Exhibit B, pp. 2-3), to which iContact responded stating in relevant part that "iContact has completed its internal data gathering and response. Are you available next week to discuss?" A true and correct copy of this email is attached hereto as Exhibit B, p. 2.

23. In response, by email dated August 19, 2010, Plaintiffs' counsel advised that she was available to discuss this matter further on August 20, 2010. A true and correct copy of this email is attached hereto as Exhibit B, p. 2.

24. Still having heard nothing substantive from iContact regarding Plaintiffs' August 16 email and Plaintiffs' position set forth therein, by email dated August 25, 2010, Plaintiffs' counsel again inquired as to the status of the letter agreement, and advised that further delay would not be acceptable. A true and correct copy of this email is attached hereto as Exhibit B, pp. 1-2.

7

25.     Finally, on August 30, 2010, iContact responded to Plaintiffs with an email outlining a list of numerous additional terms iContact for the letter agreement, including the execution of any such agreement by "each of the plaintiffs."  Besides the numerosity of these additional terms, many of them were unnecessarily restrictive and some were at least partially unacceptable to Plaintiffs.  A true and correct copy of this email is attached hereto as Exhibit D, p. 11-12.

26.     Thus, on August 31, 2010, Plaintiffs' counsel provided a detailed response to iContact's new terms, addressing each such term number by number, wherein some were again accepted and some were not, but all had a detailed explanation of the rationale for Plaintiffs' position and proposed alternative, compromise language for each.  A true and correct copy of this email is attached hereto as Exhibit D, p. 8-11.

27.     During the week of September 6, 2010, counsel engaged in one or more telephonic conversations regarding Plaintiffs' August 31, 2010 letter and iContact's continued need to address certain issues relating to its production.  Thus, on September 8, 2010, Plaintiffs' counsel sent iContact's counsel an email explaining a reasonable solution to iContact's apparent concerns regarding confidentiality, made further concessions to iContact's production (*e.g.*, agreeing to forego a privilege log based on certain of counsel's representations), and advised that with iContact's consent Plaintiffs' counsel would draft a new letter agreement to incorporate these newly negotiated issues.  A true and correct copy of this email is attached hereto as Exhibit D, p. 6-7.

28.     By email dated September 13, 2010, iContact's counsel advised that Plaintiffs' proposal seemed reasonable, but wanted to review yet another iteration of the

8

letter agreement. A true and correct copy of this email is attached hereto as Exhibit D, p. 6.

29.     Accordingly, by email dated September 14, 2010, Plaintiffs' counsel sent this revised letter agreement to iContact's counsel. A true and correct copy of this email is attached hereto as Exhibit D, p. 6, and a true and correct copy of its attachment is attached hereto as Exhibit E.

30.     Still not satisfied with all of Plaintiffs' efforts to assist iContact to meet its obligation regarding the Subpoena and avoid having to involve the Court, by email dated September 16, 2010, iContact made further additions and deletions to the letter. A true and correct copy of this email is attached hereto as Exhibit D, pp. 5-6, and a true and correct copy of the red-lined letter agreement as revised by iContact is attached hereto as Exhibit F. iContact's proposed additional changes were largely unacceptable to Plaintiffs because many of them were unclear, inconsistent, and most importantly, would have eviscerated Plaintiffs' ability to use or even discuss the information and documents provided by iContact with any third party witnesses (*i.e.*, the possible iContact Spammers) in this case without obtaining iContact's unchecked consent.

31.     Accordingly, by email dated September 20, 2010, Plaintiffs advised iContact that the proposed changes were unclear and unacceptable, but once again invited iContact's counsel to call Plaintiffs' counsel to determine if all of the attempts to amicably resolve iContact's failure to meet its obligations were finally at an end. A true and correct copy of this email is attached hereto as Exhibit D, pp. 4-5.

32.     On September 21, 2010, counsel had this call, and at its conclusion had reached an agreement concerning the language of the letter agreement. The terms of the ultimate agreement were reflected by an email dated September 22, 2010, sent by iContact's counsel, wherein the final version of the letter agreement that had been finalized the previous day was attached. A true and correct copy of this email is attached hereto as Exhibit D, p. 3, and a true and correct copy of its attachment is attached hereto as Exhibit G.

33.     Incredibly, and notwithstanding the parties' agreement which was memorialized, finalized and then sent to Plaintiffs by iContact, iContact once again, later on September 22, 2010, demanded an additional, and fundamental, addition to the letter agreement: iContact insisted, in essence as a condition of its voluntary compliance with the Subpoena, that each of the Plaintiffs be signatories to the letter agreement. A true and correct copy of this email is attached hereto as Exhibit D, pp. 2-3.

34.     However, because the agreement had already (and finally, after great effort) been reached, memorialized and delivered by iContact to Plaintiffs on the exact terms agreed upon by the parties during the September 21, 2010 telephone call, iContact's further attempts to change the deal were rejected. However, in an effort to assuage iContact's concerns, Plaintiffs explained that iContact's claimed need for this additional term was obviated by an earlier compromise on Plaintiffs' part regarding the protection of iContact's documents (*i.e.*, an agreement regarding documents designated by iContact as "attorneys' eyes only"). That email concluded that if iContact could not live without the new term, then there was nothing further to discuss. Plaintiffs' counsel emailed iContact's

10

counsel an executed copy of the agreed upon letter agreement as provided by iContact. A true and correct copy of this email is attached hereto as Exhibit D, pp. 1-2, and a true and correct copy of the signed letter agreement is attached hereto as Exhibit H.

35.     Nonetheless, on September 24, 2010, in order to determine whether Plaintiffs would now be forced to involve the Court in this dispute, counsel had one further telephone call wherein iContact made clear that without the addition of this late-to-the-game term, it would not voluntarily comply with the Subpoena.

36.     As of the date of this filing, iContact has not complied with the Subpoena and has not attempted to contact Plaintiffs in any further manner.

## ARGUMENT

**I.      iCONTACT SHOULD BE COMPELLED TO IMMEDIATELY COMPLY WITH THE SUBPOENA AND TO APPEAR AND SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT**

The Federal Rules of Civil Procedure "provide a number of discovery devices, including requests for production of documents." *Kinetic Concepts, Inc. et al. v. Convatec Inc.*, 268 F.R.D. 226, 240 (M.D.N.C. 2010) (internal citation omitted). Under Rule 45 of the Federal Rules of Civil Procedure, "a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed.R.Civ.P. 34(c). If a nonparty fails to comply with a duly issued subpoena or serves a valid objection to compliance, "the serving party may move the issuing court for an order compelling the production or inspection." Fed.R.Civ.P. 45(c)(2)(B)(i). Once such a motion is made, "the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic*, 268 F.R.D. at 243 (internal citations omitted).

11

Moreover, if a nonparty fails to comply with a subpoena issued under Rule 45, "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed.R.Civ.P. 45(e); *see also* Fed.R.Civ.P. 45 advisory committee's notes, 1991 Amendment, Subdivision (a) ("defiance of a subpoena is . . . an act in defiance of a court order and exposes the defiant witness to contempt sanctions").

### A.  iContact's Failure to Comply with the Subpoena is Inexcusable

iContact is not a party to this case, yet possesses documents Plaintiffs need to pursue this case.  iContact is in a very unique position in this regard. Not only were the Subscriber Lists misappropriated while housed and maintained by iContact on Plaintiffs' behalf, iContact's services were repeatedly used by one or more of its clients to send the illegal Spam to people on the stolen Subscriber Lists.  It is the identity, and information relating thereto, of these people and/or entities which iContact uniquely possesses, which Plaintiffs need to pursue this case, which the Subpoena seeks, and to which Plaintiffs are entitled under the Federal Rules of Civil Procedure.

iContact has failed to produce a single document pursuant to the Subpoena. Instead,  iContact has engaged Plaintiffs in a long drawn out process in attempting to negotiate iContact's compliance with the Subpoena.  That process has failed.

As set forth in great detail above, iContact did not make it easy to attempt to amicably address iContact's claimed concerns with its compliance with the Subpoena. Yet Plaintiffs have done everything they could reasonably do to attempt to negotiate a mutually agreeable resolution to iContact's claimed concerns.  These efforts extend back

12

to at least late July 2010 – almost two months. They have included multiple telephone conversations, multiple email exchanges, multiple requests by iContact to craft an agreement wholly favorable to it, and multiple concessions by Plaintiff. In doing so, iContact has simply failed to comply with its obligations under the Federal Rules of Civil Procedure. iContact must now demonstrate why its actions of apparently placing protection of its clients' alleged interests and purported confidential information above its duties to comply with this Court's Order are appropriate and not worthy of a finding of contempt.

After close to two months of negotiations, the parties finally reached an agreement with respect to iContact complying with the Subpoena. That agreement was reached on September 21, 2010, and was finalized in writing by counsel for iContact and sent to Plaintiffs' counsel on September 22, 2010. However, for reasons that are entirely unclear, iContact has taken the position that, notwithstanding all of the other previous concessions made by Plaintiffs in order to finally reach the agreement reached on September 21, 2010 regarding the terms of protection of iContact's documents, iContact has dug in its preverbal heels on one point: unless each plaintiff signs the agreed to letter agreement, iContact will not voluntarily comply with the Subpoena. Incredibly, this position was taken by iContact *after* iContact itself had sent Plaintiffs the memorialization of the agreement reached between counsel on September 21, 2010. Moreover, this position is wholly inconsistent with the fact that Plaintiffs had already agreed, in order to address iContact's concerns, to include an "attorneys' eyes only"

13

provision in the letter agreement, which iContact accepted as reflected in the final memorialization of the agreement sent by counsel for iContact on September 22, 2010.

Fundamentally, there is no reasoned basis for iContact to take the position it is currently taking. There are more than adequate protections built into the letter agreement to address whatever concerns iContact may have, at least as far as Plaintiffs understand those concerns. In addition, it took almost two months to finalize the letter agreement and it is simply time for iContact to comply with its obligations under Rule 45. More importantly, if iContact has such legitimate concerns, it makes little sense that iContact has never availed itself of the protections it is afforded under the Federal Rules of Civil Procedure; it has not moved to quash the two month old Subpoena, or moved for a protective order with respect to meeting its obligations under the Rules. Instead, iContact has steadfastly attempted to force Plaintiffs to cede to iContact's often unreasonable demands. iContact has done this through a campaign of constantly changing the terms of any agreement between the parties, delaying resolution of certain points, and then finally trying to change the deal reached and memorialized by it after the fact.

It is undisputed that iContact has information Plaintiffs need and to which they are entitled. Plaintiffs have waited long enough for this information to be produced by iContact. Moreover, because of iContact's persistent noncompliance, Plaintiffs have been forced to resort to impose upon the Court and its time to resolve this relatively straightforward and simple matter. In so doing, Plaintiffs have incurred unnecessary legal fees and costs, which should be awarded to Plaintiffs due to iContact's obstructive behavior.

14

Accordingly, Plaintiffs respectfully request that this Court issue an order compelling iContact: (1) to immediately fully comply with the Subpoena; and, (2) to appear and show cause why it should not be held in contempt for its failure to comply with the Subpoena. Plaintiffs request that any show cause order require iContact to establish why it should not, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, have to reimburse Plaintiffs the reasonable attorneys' fees and costs associated with having to address its blatant noncompliance with the Subpoena. At that point Plaintiffs request the Court to afford them the opportunity to submit evidence of these fees and costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion. If required, a Local Rule 37.1 Certificate of Good Faith Conference is attached hereto as Exhibit I.

DATED this 30th day of September, 2010.

/s/ M. Todd Sullivan
M. Todd Sullivan, NCSB # 24554
Womble Carlyle Sandridge & Rice,
PLLC
Post Office Box 831
Raleigh, North Carolina 27602
Telephone: (919) 755-2100
Facsimile: (919) 755-6058
Email: tsullivan@wcsr.com
**ATTORNEYS FOR PLAINTIFFS**

OF COUNSEL:
Brent R. Baker
Juliette P. White
John E. Delaney
PARSONS BEHLE & LATIMER
201 South Main Street #1800
Salt Lake City, UT 84111
Phone:  801-532-1234
Fax:  801-536-6111
BBaker@parsonsbehle.com
JWhite@parsonsbehle.com

WCSR  4390044v1

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE COMPLIANCE WITH SUBPOENA AND ORDER TO SHOW CAUSE AGAINST ICONTACT CORPORATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following non-CM/ECF participants by United States first class mail, postage prepaid and addressed as follows:

| | |
|---|---|
| Neil S. Bagchi | iContact Corporation |
| Bagchi Law, PLLC | c/o Merrill M. Mason, Registered Agent |
| 51 Oakwood Drive | Smith Anderson Blount Dorsett |
| Chapel Hill, NC 27517 | Mitchell & Jernigan, LLP |
| | 2500 Wachovia Capitol Center |
| | P. O. Box 2611 |
| | Raleigh, NC 27601 |

DATED this 30th day of September, 2010.

/s/ M. Todd Sullivan
M. Todd Sullivan, NCSB # 24554
Womble Carlyle Sandridge & Rice, PLLC
Post Office Box 831
Raleigh, North Carolina 27602
Telephone: (919) 755-2100
Facsimile: (919) 755-6058
Email: tsullivan@wcsr.com
**ATTORNEYS FOR PLAINTIFFS**

OF COUNSEL:
Brent R. Baker
Juliette P. White
John E. Delaney
Michael W. Young
PARSONS BEHLE & LATIMER
201 South Main Street #1800
Salt Lake City, UT 84111
Phone: 801-532-1234
Fax: 801-536-6111
BBaker@parsonsbehle.com
JWhite@parsonsbehle.com

WCSR 4390044v1