IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OTC SOLUTIONS, LLC; GOLDEN )
DRAGON MEDIA, INC.; and PUDONG )
LLC, )
 )
            Plaintiff, )
 )
      v. ) 1:10CV500
 )
JOHN DOES 1-50, )
 )
            Defendants. )

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court for a ruling on Plaintiffs' Motion for Immediate Compliance with Subpoena and Order to Show Cause Against iContact Corporation. (Docket Entry 9.) For the reasons that follow, the Court will deny Plaintiffs' motion as moot.

**Factual Background**

The Complaint alleges the following facts regarding the alleged theft by unknown parties of certain of Plaintiffs' email subscriber lists ("Subscriber Lists") which Plaintiffs had entrusted to third-party vendor iContact Corporation ("iContact"):

Plaintiffs are financial communications and consulting companies specializing in micro-cap and small-cap companies listed on the OTC Bulletin Board, OTC.PK, AMEX, and NASDAQ. (Docket Entry 1, ¶ 8.) Their services include creating and distributing stock reports to interested parties via email. (Id.) The stock reports

are only distributed to subscribers to Plaintiffs' newsletters (id., ¶ 9.) and, to become a subscriber, a person must proactively choose to receive Plaintiffs' newsletters (id.). Given the nature of online marketing and promotion, as well as constraints on the use of spam email, such Subscriber Lists have significant value. (Id.) In order to protect and manage the process of distributing its newsletters to the Subscriber Lists, Plaintiffs entrusted their Subscriber Lists to third-party vendor iContact. (Id., ¶ 15.) iContact specializes in email and internet marketing. (Id.)

In April 2010, unknown individuals (the "John Doe Defendants") unlawfully gained access to Plaintiffs' Subscriber Lists and downloaded them from iContact. (Id., ¶ 17.) To gain such access, the John Doe Defendants either breached iContact's security or unlawfully obtained Plaintiffs' passwords and access codes to gain unauthorized access to the Subscriber Lists that Plaintiffs maintained at iContact. (Id., ¶ 20.) After misappropriating Plaintiffs' Subscriber Lists, one or more of the John Doe Defendants used the lists to distribute newsletters intended to imitate the newsletters created and distributed by Plaintiffs. (Id., ¶ 21.) Specifically, one or more Defendants uploaded the misappropriated Subscriber Lists to new and/or separate accounts at iContact through an iContact computer and/or network and then used iContact's email marketing services to distribute their own illegal spam newsletters. (Id.) Employees at iContact confirmed Plaintiffs' suspicions that their Subscriber Lists had been uploaded to new accounts controlled by others, who then used

iContact's services to send out illegal spam newsletters. (<u>Id.</u>) In addition, one or more of the John Doe Defendants have also used the misappropriated Subscriber Lists to distribute promotional newsletters and advertisements through other internet marketing firms similar to iContact. (<u>Id.</u>, ¶ 23.)

Although Plaintiffs expended substantial effort to identify the John Doe Defendants before filing the Complaint, they could not determine the specific identities of the individuals responsible for the security breach and/or unlawful access at iContact and the misappropriation of Plaintiffs' Subscriber Lists. (<u>Id.</u>, ¶ 24.)

## **Procedural Background**

Following their filing of the Complaint against the unknown John Doe Defendants, Plaintiffs filed a Motion for Accelerated Pre-Conference Discovery (Fed. R. Civ. P. 26(D)). (Docket Entry 5.) In that motion, Plaintiffs requested permission to "conduct early discovery, through targeted third-party subpoenas, to secure information regarding the identity of some, if not all, of the John Doe Defendants currently named in this matter." (<u>Id.</u> at 1.) The Court granted Plaintiffs' motion (Docket Entry 8), and Plaintiffs thereafter served subpoenas on relevant third-parties, including iContact (<u>see</u> Docket Entry 9 at 1).

Over the course of two months, Plaintiffs and iContact negotiated the terms of a letter agreement through which iContact sought to protect the confidentiality of the information requested by Plaintiffs. (<u>See</u> Docket Entry 10, ¶¶ 10-35.) Although iContact and Plaintiffs came to an agreement over substantially all of the

-3-

terms of the letter agreement, they reached an impasse regarding who would execute the Letter Agreement on behalf of Plaintiffs. (See id.)  iContact insisted that each Plaintiff individually execute the letter agreement.  (See id., ¶¶ 33-35.)  Plaintiffs took the position that an "attorney's eyes only" provision in the agreement adequately protected iContact and that Plaintiffs' counsel alone should execute the letter agreement.  (See id.)  As a result of this impasse, Plaintiffs filed the instant Motion for Immediate Compliance with Subpoena and Order to Show Cause against iContact Corporation.  (Docket Entry 9.)  Through said motion, Plaintiffs asked the Court to "enter an order requiring iContact to immediately and fully comply with the terms of the subpoena and appear before this Court and show cause why it should not be held in contempt."  (Id. at 1-2.)

iContact responded by contending that "the obvious solution to [the instant] problem is to have the Court enter an order essentially along the lines otherwise agreed to by the parties [in the letter agreement], but also comprehending within the scope of the order the individual Plaintiffs and not just their counsel." (Docket Entry 12 at 4.)  iContact also stated that "[o]nce an appropriate protective order is in place iContact is in a position to promptly provide the information requested." (Id. at 5.)

According to Plaintiffs' Reply, despite iContact's objections and its request for a protective order, on the day following the filing of its Response, iContact provided Plaintiffs with information responsive to Plaintiffs' subpoena.  (See Docket Entry

18 at 3.) However, the data logs provided by iContact begin on June 28, 2010, and iContact's production contained no information from April and May 2010. (Id.) As "[t]he data theft at issue in this litigation occurred sometime prior to the end of April, and the illegal spamming occurred in late April and May of 2010" (id.), Plaintiffs deemed iContact's production "critically incomplete" (id.). "While all other disputes have been resolved, iContact's only explanation regarding the missing data logs has been, and remains, that the data in question does not exist." (Id. at 3-4.) "iContact has not explained whether this is because the data never existed, because the data was erased or destroyed, or because the data simply exists in a hard to access location." (Id. at 4.)

In light of iContact's production, Plaintiffs asked, in their Reply, that this Court issue an order "compelling iContact: (1) to immediately and fully comply with the Subpoena by explaining why the data logs at issue are unavailable prior to June 28, 2010 and taking all steps necessary to preserve any remaining evidence concerning those data logs; and (2) to appear and show cause why it should not be held in contempt for its failure to comply with the Subpoena and for the destruction of evidence, if appropriate." (Id. at 9-10.) Neither iContact nor Plaintiffs have made any further filings. (See Docket Entries dated Dec. 6, 2010, to present.)

## Discussion

iContact's production renders Plaintiffs' instant motion (Docket Entry 9) moot. Said motion focuses only on the protective

order dispute and iContact's related total failure to respond to the subpoena in asking the Court to "enter an order requiring iContact to immediately and fully comply with the terms of the subpoena and appear before this Court and show cause why it should not be held in contempt." (Id. at 1-2.)[1] However, after Plaintiffs filed the instant motion and iContact responded, iContact apparently abandoned its position regarding the protective order and produced materials in response to the subpoena, as Plaintiffs' Reply recognized: "[D]espite having filed a [r]esponse in opposition to Plaintiff's [m]otion, on October 21, 2010, iContact attempted to comply with the Subpoena by producing materials . . . it deemed responsive pursuant to the terms of a signed letter agreement . . . ." (Docket Entry 18 at 3.) Plaintiffs' Reply then raised a new dispute regarding iContact's allegedly inadequate production of materials pertaining to the period prior to June 28, 2010. (See id. at 3-4.)

---

[1] Plaintiffs' Memorandum in Support of Motion for Immediate Compliance with Subpoena and Order to Show Cause Against iContact Corporation also requests that "any show cause order require iContact to establish why it should not, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, have to reimburse Plaintiffs the reasonable attorneys' fees and costs associated with having to address its blatant noncompliance with the Subpoena." (Docket Entry 10 at 15.) Plaintiffs have cited no authority for the proposition that Rule 54(d) authorizes attorneys' fees against a nonparty for failure to comply with a subpoena. (See id.) Further, even if the Court did have such authority, Rule 54(d)(2)(B)(ii) requires the moving party to "specify the judgment and the statute, rule, or other grounds entitling the movant to the award[.]" Plaintiffs have made no such specifications. (See id.) Notably, Rule 45, which addresses subpoenas, contains no provision allowing for an award of attorneys' fees. See, e.g., Bailey Indus., Inc. v. CLJP, Inc., 270 F.R.D. 662, 672-73 (N.D. Fla. 2010) (denying award of attorneys' fees under Rule 45 and citing similar cases holding that Rule 45 provides no such sanction). Given the absence of authority from Plaintiffs demonstrating the propriety of any fee-shifting in this case, the Court declines to order any such fee-shifting.

The issue of the existence of data pertaining to the time period prior to June 28, 2010, however, was not contemplated in Plaintiffs' original motion (see Docket Entry 9). Instead, Plaintiffs only raised that matter in their Reply (see Docket Entry 18), to which, under the applicable rules, iContact has had no opportunity to respond. Accordingly, although the Court is sensitive to Plaintiffs' concerns raised for the first time in their Reply, such matters are distinct from the issue raised by the pending motion.

If Plaintiffs require adjudication of the matters identified in their Reply, they must file a separate motion which affords iContact a full and fair opportunity to respond. Prior to the filing of any such motion, the Court strongly encourages Plaintiffs and iContact to work cooperatively together to attempt to resolve this matter without further need of judicial intervention. To the extent further litigation must occur, the Court notes that "even an informed suspicion that additional non-privileged documents exist . . . cannot alone support an order compelling production of documents." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 252 (M.D.N.C. 2010) (citing Univ. of Kansas v. Sinks, No. 06-2341-KHV-GLR, 2007 WL 869629, at *3 (D. Kan. Mar. 22, 2007) (unpublished) ("The Court cannot compel a party to produce documents based solely on opposing speculation and belief that

responsive documents exist and that the producing party is withholding them.")).[2]

## Conclusion

iContact's production in response to Plaintiff's subpoena, though belated, renders Plaintiff's Motion for Immediate Compliance with Subpoena and Order to Show Cause Against iContact Corporation (Docket Entry 9) moot. Questions regarding the completeness of iContact's production and the existence of data pertaining to the time period prior to June 28, 2010, are more appropriately addressed through a separate motion to compel and separate briefing as that issue presents distinct inquiries from iContact's general failure to comply with Plaintiffs' subpoena based on a dispute over a protective order.

---

[2] As a final matter, the Court notes that a subpoena commanding a production of documents "must issue . . . from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). Although the record does not appear to contain a copy of the actual subpoena issued in this case, some of the materials in the record indicate that Plaintiffs sought production in Utah. (See Docket Entry 6-2 at 2; Docket Entry 10-2 at 7.) Plaintiffs must "move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). Moreover, only "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse the obey the subpoena." Fed. R. Civ. P. 45(e). In connection with any subsequent motion in this Court to compel a response to or otherwise enforce a subpoena, Plaintiffs must be prepared to show that the subpoena properly was issued from this Court and to address whether any "failure to obey must be excused [because] the subpoena purports to require [a] nonparty to attend or to produce at a place outside the limits of Rule 45(c)(3)(A)(ii)," Fed. R. Civ. P. 45(e).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Immediate Compliance with Subpoena and Order to Show Cause Against iContact Corporation (Docket Entry 9) is **DENIED AS MOOT**.

                                      /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                                 **United States Magistrate Judge**

October 5, 2011